Good evening everyone. We're here in the matter of a consolidated case, actually. You'll be hearing Mr. Binderup and Suarez versus the Attorney General. May it please the Court. Patrick Mimaroff on behalf of the government. And if I may, I'd like to reserve six minutes of time for rebuttal. Bandits were prohibited from possessing firearms by Section 922G1 because they were convicted of serious crimes. And the Second Amendment does not entitle them to seek exemptions from that prohibition based on individualized inquiries into their dangers. In Heller, the Supreme Court went out of its way to caution that nothing in its opinion should be taken to cast doubt on the prohibition at issue in this case. And this Court in Marzarella explained that such long-standing prohibitions are exceptions to the right to bear arms. The reason for that, as made clear in Heller, is that the right to bear arms is reserved to law-abiding and responsible citizens. As a result, a number of courts have recognized that, like the right to vote, serve on a jury, or serve in public office, the right to bear arms is subject to categorical exclusion of individuals based on conviction. Plaintiffs nonetheless claim that the Second Amendment entitles them to individualized, ad hoc determinations of dangerousness as a prerequisite for Section 922G1's ongoing application. They believe that individuals subject to that prohibition should be able to come into court at any time and argue that based on all of their circumstances, they should be declared harmless and have their firearms rights restored. But that approach has no support in history or in the law. Plaintiffs identify no constitutional right to such individualized determinations with respect to any of the other disabilities that are routinely imposed based on conviction. And they also identify no such historical practice with respect to firearms, specifically. And courts have rejected their proposed approach. Some courts, like the Penn Circuit in Inter-United States or the Eleventh Circuit of Rozier, have simply concluded that individuals convicted of serious crimes categorically lack any Second Amendment right. Other courts, like the Ninth Circuit in dealing with an as-applied challenge to 922G9 and Chauvin, have assumed a Second Amendment right, but in applying means and scrutiny, have found that Congress permissibly may enact a broad prohibition with limited exceptions. But under either approach, courts have recognized that the Second Amendment does not require that the prohibition be justified by evidence of dangerousness on a case-by-case basis. Now, it's particularly hard to read Heller as endorsing plaintiffs' proposed approach because plaintiffs haven't identified any principled way to draw lines or determine who should have their rights restored. They point to the time that's passed since their conviction, but they give no way for determining how much time is enough, whether it's 10, 15, 20 years, or whether that depends on the nature of their underlying conviction. They talk about their personal circumstances, like service in the military that predated the disqualifying conviction, or their employment histories. But in Dean, the Supreme Court explained that relying on such facts to make predictive judgments would be an inherently policy-based determination. And this court in Parmarelli warned that because courts can't conduct systematic investigations, such determinations would be based on dangerously one-sided and unreliable facts. And Congress barred Section 925C applications precisely because it concluded that making such predictions is a very difficult and subjective task, which could have devastating consequences for innocent citizens if the wrong decision is made. The Second Amendment does not require courts to engage in such standardless inquiries in judging the constitutionality of Section 922G1. Plaintiffs were convicted of serious crimes, and the provision is therefore constitutional as applied to them. Now, I know the court generously gave me five minutes. I'm happy to start taking questions now. What do we do with the presumption in Heller? Heller talked about the restrictions being presumptively lawful. Are you saying that the presumption is a conclusive presumption, that it can never be rebutted? And if it can be rebutted, then what does that do to your argument? Well, I don't think that in using the word presumptive, what the Supreme Court was doing was implying that there have to be successful as-applied challenges for every single one of the statutes and laws that the Supreme Court was addressing. I think the proper way to read that footnote, the Supreme Court first says, nothing in its opinion casts doubt on these laws. And then it lists a number of laws that are presumptively constitutional. I think it's simply saying, well, of course it hasn't addressed every possible constitutional challenge to every single one of those laws, but at a minimum, there's a weight, a thumb on the scale, suggesting that the laws would be constitutional in each individual case. I think it's a stretch to say, based on that one word, presumptively, the court has to go out of its way to find successful as-applied challenges for each of those laws listed. But they have to be longstanding prohibitions, correct? That is one category of laws that the Supreme Court identified as among the laws that its opinion was not casting doubt on. And the prohibition on felons is longstanding, correct? Yes, that's what the Supreme Court indicated. But can state or federal legislatures change the meaning of the word felon over time? I suppose they could. I mean, here, I think the longstanding prohibition is on individuals convicted of serious crimes. Why couldn't they? Why isn't that just a definitional matter that any legislative body could deal with? Well, I mean, at some point, you know, if a state said that anybody who had a speeding ticket, that would be deemed a serious crime, they'd lose their firearm rights. I think that, you know, would not fall within the historical tradition of losing firearms rights. But the law at issue here, 922G1, tracks the definition of serious crime that has long been understood. Congress said an individual convicted of a felony punishable by more than one year or a misdemeanor punishable by more than two years, and Congress treats such misdemeanors as equivalent to felonies. That includes reckless driving in the state of Michigan. That may be true. Punishable by more than two years. That may be true. So it's a simple possession of marijuana in Arizona. Well, what I'd say, Your Honor, is the law has been upheld facially as constitutional. Here, we're dealing with crimes that certainly are serious. So one individual that kind of flew this far. But serious is not in the terms of dangerousness. I think they are dangerous in any relevant sense. Dean, some of you, 17, knowing she's 17. Well. That's Dean, maybe. You can get into a little virtuous argument here. But how is that dangerous in the sense of a restriction on firearms? Well, let me explain why they are dangerous in any meaningful sense, but I also want to explain why I don't think that's exactly the right inquiry, and I'll get to that. So the crime Your Honor just referenced, the reason Pennsylvania subjects that conduct to a penalty of up to five years in prison is certainly because it believes that it poses significant harm to the victim. And that judgment is not just one that Pennsylvania has reached. But if she's one day short of the age of 18, another example going along with yours, Herman, in Pennsylvania, the third detail theft rises to the level of felony. So if somebody steals on three separate occasions, I'm going to say a steak because then we get saying some ground beef for dinner the third time he's caught or she's caught. That's a felony. You're saying this person needs to be disarmed because they stole a hamburger? I'm saying I think it's reasonable for Congress to refer to state's judgments about the seriousness of the crime. Now, if the state. If that's true, then why do you discount the idea of a distinction between felony and misdemeanor? In your briefing and in your prior oral argument, which I listened to in the panel decision, you entirely dismiss, give back your hand to the idea that states call these things misdemeanors, as if that meant nothing at all. Why is it important to you that the states attach a certain time, say they gave two years and one day, or another state gave two years minus one day? Why is that significant? But it's irrelevant that a state says that's a misdemeanor, but this other is a felony. Well, the statute does treat misdemeanors and felonies different, of course. Felonies have to be punishable by more than two years in prison. All we're saying is that if a misdemeanor is subject to three years, five years in prison, It's a serious point, which is you lay a lot of emphasis on how the state chooses to set a maximum, that that's dispositive in your view, but you give no account at all to whether a state chooses to call something a misdemeanor or not. That's completely irrelevant, you say. Why is it such a big deal to you that a state might go a little above or a little above two years, but it's irrelevant for them to categorize something as a felony or a misdemeanor when we know that that kind of categorization can have enormous consequences? Well, let me first say, as I said, it's not irrelevant under the statute. There are differences in terms of what sentence is required. What the Supreme Court recognized in Tennessee v. Gardner, for example, is that many misdemeanors are more serious than some felonies. For example, in Pennsylvania, assault on a child under 12 is labeled a misdemeanor, but that's certainly a significant crime. So is manslaughter, throwing a firebomb into a moving vehicle. What standard would you use to distinguish serious crimes from non-serious crimes? The standard that Congress adopted, I think, is the right one, which is to look at how states would subject that crime. Is that not principles of federalism where the federal government defers to the state as to how to categorize an offense and the period of punishment that it decides on? I think that certainly supports what Congress has done here. So the states can decide what's obscene and what isn't obscene for First Amendment purposes? If one state wanted to take a very broad definition of what's obscene, then people in, say, Iowa will have different First Amendment rights than people in Massachusetts. The decision, Your Honor, here is what we're dealing with is a longstanding prohibition on individuals convicted of serious crimes. So what Congress needed to do— Why are you putting your hat in the hat when you put the word serious in there? If you could take out your hat— How do we define serious? How do we define serious? I think you define serious by the punishment that a state would impose. I mean, Congress's definition is the right one. But doesn't there have to be a uniform federal standard? I mean, that's the whole point of McDonald and the doctrine of incorporation. We can't have people with disparate Second Amendment rights in the 50 states any more than we can give them disparate First Amendment rights in the 50 states, can we? I don't think the fact that different states have different criminal codes makes this in any way suspect. If an individual is convicted of a crime that's deemed serious wherever they've been convicted, then they've historically lost the right to vote, the right to serve on a jury, the right to bear arms. And that has never been called into question because different states have different criminal rights. Counselor, let me ask you another basic question. What's the government's position on whether or not a person can bring an as-applied challenge? I'm not sure from reading your brief and listening to your argument as far as what it is. Well, of course it can bring an as-applied challenge. We don't think that the plaintiff's proposed approach here of looking at all of their individual circumstances in order to determine whether this action is constitutional is the right approach. That doesn't have any basis historically in the way firearms rights have been treated. It doesn't have any basis in any other analogous areas of law. So how could one bring an as-applied challenge that you would think would be properly brought? Well, I'm not aware of any way in which Section 922G1 is unconstitutional as-applied. So I can't. That is an excellent question. It sure doesn't. It's not even an article. No. Because you did say that you allowed for an as-applied doctrine, but now you're saying, well, I'll allow for an as-applied doctrine even though it doesn't exist. That's what you're basing it on. It doesn't exist. Well, I guess what I'm saying is that we can bring it, but we don't recognize it. That's right, yeah. I think what I'm trying to say, Your Honor, is that in order to rule for us here, what the court should look at is the approach that district courts took. And we think that approach was wrong, the approach that the plaintiffs have provided. That's wrong. We're not asking the court to foreclose. I mean, we can't predict every possible constitutional challenge that might come forward in the future. Why is the district court's approach wrong? I'm not sure I understand that, particularly in the context of the question I asked. Which it hasn't answered yet. Which it hasn't answered yet, yes. The as-applied challenge here is made not as of the time that the disability to bear firearms was imposed. The as-applied challenge here is directed to what has happened 15 and 20 years later. Now, it seems to me that the questions we're getting here on as-applied are directed at the time when the penalty was imposed, but from my reading of the complaint here, my understanding is here the as-applied challenge is, well, these guys got what they deserved, but they don't deserve it anymore. And do you find a significant difference in that? Yes, Your Honor. I mean, there might be a difference. If someone could identify some crime in some state that was just so out of the bounds of normalcy, that would be a different sort of challenge. But here what the plaintiffs are saying is that based on the passage of time, various personal circumstances that we're going to present to the court, you should say that my right to firearms should be restored. But there really isn't any precedent for that. Aren't they saying we're not violent and we never have been violent? If that's what they're saying, that's not the basis for the long-standing prohibition. The reason the prohibition has been in place as, you know, traditionally and specifically with respect to this statute is because individuals convicted of serious crimes are not part of law-abiding responsible citizens, so they shouldn't be tested with firearms. And so we get back to what is a serious crime, and felons historically for centuries included very violent actors, murderers, manslaughter, armed robbery, breaking and entering, acts of violence, right? But again, the petition here is not based on the acts for which the disability was imposed in the first place. It's based upon what has changed since then. And if they haven't pled what the disability was imposed for in the first place, are we in a position now to say that we will go back and look at the overall constitutionality of 922G1? Right, and I don't think the court is in a position to do that. And just to your question, Judge Hartman. We're not talking about a facial challenge. We're talking about an as-applied challenge to these individuals. And you've said now, I've counted it three times, that there's no basis in the law for an as-applied challenge to look at individuals. Even though it exists. Now, within the last two, three years in a First Amendment case, we described an as-applied challenge as whether the statute's burden substantially more of the plaintiff's speech than is necessary to further the government's legitimate interest, and in this instance it was protecting children. That looks to me like a First Amendment case in which we look at an individual's rights, how they're being burdened, and then ask the question, the means and scrutiny question. Is that not an instance of an as-applied challenge where we look at the individual's circumstances and how the government's burden is hidden to that individual? I think another way of answering your question, Your Honor, is to say you look at the individual, but the question is what circumstances are relevant to the constitutional question before the court. Well, if you agree that you can look at the individual, then doesn't your argument that this has to be categorically based fall out? Because in your briefing and here today, you seem to be saying that it's classes of people, felons, people who have committed serious crimes, and there's no room for looking at individuals. So that seems to me to be like a basic fork in the road. Either you can look at individuals or you can't. So the question I'm putting to you is, is the government's position that you just can't look at individuals when you're talking about an as-applied challenge? I mean, in the way that Your Honor is suggesting, no. And the reason is that a First Amendment analogy just doesn't hold is what you're saying. Right, and the reason is that here the question for Second Amendment purposes is whether the individual falls in the category of law-abiding responsible citizens or whether the individual That's not the question. That's just an ipsy. You're saying I'm refusing to acknowledge that there could be an individual look. But why is that the question? If you have the why, the who requirement under Heller for the Second Amendment that you can affect a who, you can affect a particular person, and the petitioners here fall within the category of that person, doesn't that make it significantly different from a First Amendment position on as-applied? Right. It's not just an ipsy-dixy. The Supreme Court in Heller really made clear that this is a right of law-abiding responsible citizens, and it said nothing in its opinion cast doubt on these laws. Is it your view that, for example, Binderup is disqualified from the very beginning, in other words, 922G1 disqualifies that person from any further consideration of Second Amendment rights, or is it your view that Binderup fails on the merits of the application? I think given the crime that Binderup was convicted of. On the merits of an as-applied challenge. Given the crime that he was convicted of, it fails on the merits of an as-applied challenge, but you don't have to look and you shouldn't look at all the other factors that the plaintiffs seek to rely on. How is it an as-applied challenge? Why don't we get all that, that individual stuff, and how does it still become an as-applied challenge? Isn't that what an as-applied challenge is? We'll get all that individual stuff that the plaintiffs wouldn't have to look to. Well, that's not, I think, what an as-applied challenge should be in the context of a Second Amendment right that's been defined the way the Supreme Court has defined it, the way it's been well understood. But you would apply it to the category, right, because Heller took a categorical approach. For example, I assume you would say a murderer never gets a Second Amendment right back because that person is a violent felon, right? Sure, yes. And same with a carjacker. If you're 21, you commit a carjacking, you can't come back when you're 40 and say you've been rehabilitated. Once they commit that crime at 21, you say they're categorically dispossessed, right? That's correct. All right, but what about nonviolent felons? Isn't that what makes these cases difficult? Or are you resting your argument on the notion that Binderup and Suarez committed, quote, violent crimes? Well, to answer your question, I don't think it matters whether or not the court considers them to be violent crimes. In Heller, the Supreme Court said nothing passed out on the law, and it applied to nonviolent felons. Longstanding prohibitions on felons. The problem is we don't have longstanding prohibitions on nonviolent crimes being classified as felons. Isn't that also what makes these cases difficult? Only since 1961 have nonviolent felons fit the category. Isn't that right? Under the federal law, that's right. So it's not a longstanding prohibition. Well, that's not what the Supreme Court indicated in Heller. And the Fourth Circuit, First, Eleventh, Ninth, and Fifth Circuit have all upheld 922G1 as applied to laws that they characterize as nonviolent. What is longstanding? What's our yardstick? I think that in this case, that may be a difficult question in some cases, Your Honor, certainly. But in this case, it really isn't one the court has to answer because the Supreme Court specifically identified this prohibition. But if you had to answer, what would you say? Well, I think a number of courts have indicated that while it's longstanding, it doesn't mean that it has to go back to the founding. It can reflect more recent judgments. Here, Your Honor is correct. Longstanding means more recent? Well, more recent judgments than the founding. It's been there for a while. Isn't 50 years as opposed to 1789? So we're all longstanding, apparently. Mr. Nemerov, for your answer on the as applied question, which I'm not sure you answered, but are you asking us to overrule our decision in U.S. v. Barton? Well, as we indicated in our briefing in the cases, we think that Barton can be read as restricted to individuals convicted of minor crimes. But to the extent that Barton suggests a more detailed, individualized approach, then yes, we think that's wrongly decided. We think it's contrary to Heller, and we think it's contrary to the tradition, both with respect to firearms rights and with respect to voting rights. So don't we have to overrule Marzarella, too? That was an as applied challenge. No, Your Honor. Because it came out. Both Barton and Marzarella came out in favor of the government, and both were as applied challenges. So if Barton has to be overturned because we accepted or evaluated it as applied, then why doesn't Marzarella have to be overruled? What the Court didn't do in Marzarella was suggest that in determining the constitutionality of an act of Congress, it's appropriate for a judge to look at all of these personal circumstances in terms of the length of time since the conviction, various facts that have been given to the Court. That sort of inquiry wasn't an issue in Marzarella. It wasn't even really an issue in Barton because it was clear that the law was constitutional no matter what approach the Court took. No court has adopted that approach, no court of appeals in Heller law unconstitutional as applied, and there really isn't a basis for that approach. When you say there isn't a basis for that approach, I come back and I'm puzzled because as applied, I always thought as applied meant as applied to me the plaintiff, not as applied to some general group out there that the government might construct, but as applied to me. How do you get to as applied doesn't mean as applied to the individual. It means as applied to a group that the government decides the as applied challenge might properly be applied. What's your foundation for that? The same reason that an as applied challenge to voter disenfranchisement laws would fail as soon as you recognize that the individual is convicted of a serious crime is the same reason why this as applied challenge fails. Well, maybe it wouldn't, so don't go to some place and say, well, that's so obvious because maybe it isn't so obvious. What is it about this right that makes it different from a First Amendment right where we ask the question as applied to that person, especially in light of Heller's statement that the First Amendment is typically a good place to look for some analogies? Well, in Heller, the Supreme Court also recognized that the Second Amendment right is one for law-abiding, responsible citizens. And in sight of the historical, we're saying, that's me. That wasn't me 25 years ago, but that's me today. And as applied to me, this prohibition is no longer fair. So that's, I don't know what anybody else's interest in this, but I'm really trying to get the government to come to grips with this and not say, well, forget about that. Why is it that in this context, as applied shouldn't mean as applied to the individual who's bringing the challenge, which is what I think it means in other contexts. Can you point me to another context where as applied doesn't mean as applied to the person who's saying this is what's being applied to me? Can you hear that sound? Can you answer that question? What I can point you to are other laws, like the felon disenfranchisement laws, where there hasn't been this tradition of looking at this. And the reason, as I indicated, I think, is because whether someone is a law-abiding, responsible citizen has been determined by their conviction. It hasn't been that courts could come in and say, well, now enough time has passed, based on your circumstances, I'm going to declare you a law-abiding, responsible citizen. So that is the basis. And I think that's why the as-applied challenges fail here. Judge Nega, are there any questions at all? Can you hear me? I hear you well. I have no other questions. Okay, thank you. Did you, sir, try to save time for yourself? Six minutes. I did. Okay. Thank you. Thank you. Good morning. May it please the Court, Alan Guerra for Daniel Bindrup and Julio Suarez. Courts have the time to administer Section 922G1. They have the time to consider the as-applied challenges to that statute, which the Supreme Court in Heller all but invited, a fact acknowledged not just by the government during the bargain, and by this Court's opinion in bargain, but by every circuit that has considered the matter. These challenges require an examination of individuals' particular facts and circumstances. One example from another circuit sums it up quite well. This is the Fourth Circuit's version of the bargain test. The Heller Court's holding, I'm quoting here from U.S. v. Carpio Leone, The Heller Court's holding that defines the core right to bear arms by law-abiding responsible citizens does not preclude some future determination that persons who commit some offenses might nonetheless remain in the protected class of law-abiding responsible persons. That's just one of, by my count, four Fourth Circuit opinions that are recognized as applied challenges to 922G1. And as both district courts here showed, albeit in different ways, these challenges are fully consistent with this Court's two-step process adopted in Marzarella. Now, of the two paths followed below, Judge Gardner's decision in Binderup more closely hews to, however, anti-circuit precedent. But Judge Caldwell's decision in Suarez, which approximates the Fourth Circuit's approach, is also consistent with Second Amendment principles. For all intents and purposes, however, these different approaches are functionally identical. Either way, the claim ultimately arises or falls based on the only criteria that matters, the individual's propensity for dangerous conduct. The Second Amendment does not stop the government from disarming dangerous people, but the Amendment's essence is that it does indeed stop the government from disarming the non-dangerous. Considering the uncontroverted evidence in both cases and the command of Supreme Court and Circuit precedent, both decisions below should be affirmed. Now, to begin, the mere fact of conviction cannot end a challenge at step one, because Congress cannot circumvent a fundamental right simply by declaring someone to be, quote, not law-abiding. It stands to reason that even felons, whose disarmament is presumptively lawful, must be able to come to court and argue that they are, in fact, law-abiding. Of course, in this case, we are not even dealing with felons, but with misdemeanors, so the government should carry the entire burden, not the plaintiffs. In any event, should this Court now change its mind and hold that there are no as-applied challenges to Section 922G1 available, it would not only need to overrule Barton, it would place itself into instant conflict with Heller and with the Fourth, Seventh, and D.C. Circuits. It would also be in grave error. The question is not whether as-applied challenges are available, but rather how the courts go about deciding them. Now, under Judge Caldwell's approach, Barton supplies the first prong of Marzarella. If a person is not law-abiding, his or her possession of arms falls outside the Second Amendment's protection, and there, the case ends. But if the challenge shows that he or she is, in fact, today law-abiding and responsible, then what do we do with Step 2? Step 2 must resolve, in that scenario, in the individual's favor, since the government's crime-fighting interest, which is not disputed here, cannot be advanced by disarming a non-dangerous person. This is essentially the Fourth Circuit's approach in U.S. v. Moore. That court held that where presumptively lawful regulatory measures are concerned, the two-step analysis is, quote, streamlined to effectively adjust the first step. But there's no need to be this convoluted. The two-step process is not etched in stone. It's not even etched in Heller, which famously used no such two-step process. Nor, for that matter, does Marzarella strictly require a two-step process. In Heller, the Supreme Court struck down two laws because they were incompatible with the Second Amendment. And whatever the attraction and utility of the two-step process is, in some cases, there's no need to jam the round-as-applied peg into the square second-step hole. Bargain, which was decided after Marzarella, is not in conflict with that decision. It's apples and oranges. A two-step case deals with laws that regulate a right. A bargain challenge deals with whether someone is entitled to exercise a right. We've had some discussion here about where the presumption begins, whether or not it matters whether we label people felons or misdemeanants. Actually, it matters quite a lot, and it matters to the Justice Department. We had recently, a month ago, an interesting determination by the Justice Department that we should no longer use the term felons to refer to people who are convicted of crimes. We should only refer to them as people who have had experience with the justice system or who otherwise have been convicted of crimes because we don't want to stigmatize them and complicate their reentry into society. Yet here the government would like to bestow this label felon on to people for the purpose of disarming them and depriving them of a fundamental constitutional right with no possible avenue of escape. Why do you say the government is doing that when Justice Scalia's opinion in Heller specifically refers to long-standing prohibitions on felons? I'm saying that, Your Honor, because the government is referring to felons very casually when the plaintiffs here are not felons under anybody's definition. Well, then that's a different issue, right? That's correct. Isn't your argument that they've redefined what it means to be a felon? The government argues that by redefining what it means to be a felon, it can effectively deprive people of Second Amendment rights. And our argument is that it cannot possibly be that way. But this whole notion of rehabilitation, is it your position that if someone commits a murder at age 21, that they're entitled to walk into federal court at age 40 and put on proofs to say I'm not that same guy? People are entitled to come into federal court and make any argument they want. That person would likely not succeed. Why? Because what I'm trying to get at here is, should the categorical decision as to whether someone is dispossessed rightfully be made at the time they commit the crime? Or is it some sort of ongoing evaluation that might occur over the next several decades? The court has to look at the facts as they are currently before the court. This goes back to the Schooner-Piggyby case in the 1790s. You look at the facts presented to the court today, and that's what's presented to the court. Now, if somebody comes in and- If that's your answer, then there's never, ever any lifetime dispossession of the right. Because, let's take voluntary manslaughter. Let's take a police officer's manslaughter when someone is 16. Kids at home, he thinks he's got a right to defend himself. It turns out that he doesn't. He shoots some person. It's not a legitimate use of deadly force. Now, that's a violent individual. Whether or not it's a dangerous individual, we can argue about that. Let's say 45 years later, when the kid has had no further involvement with the law, and this is not that far-fetched of an example, where people are sitting and waiting for about an hour and a half from here, a lot of them in this category. Forty-five years later, no problems with the law. Are you saying that- I'm not quite sure what you're saying in that context. How does that apply? How does that apply? How does manslaughter- In that context, Your Honor, under Heller, that person is presumptively disarmed. That person is a felon under any definition of the term. They've committed a serious violent crime. Can that person then come in and seek to get the right to possess weapons reinstated by showing they were- and even the court has said the mind of a 16-year-old is not fully formed, and any of us who have dealt with 16-year-olds know that. So that happened when the kid was 16. Forty-five years later, no problems whatsoever. Are you saying that person ought to be able to come- and what I'm trying to get to is the categorical approach, and forget misdemeanors within the context of a felony. Does the categorical approach apply? And if it does, to what extent does it allow for as-applied challenges, or is it systematically inconsistent with the concept of an as-applied challenge? That person can come to court and make the argument. The analysis is a holistic one. It takes into account various factors, and I would suppose that that person, in Your Honor's example, would have a very, very difficult time making out the argument. They're free to come to court and try to make it. Heller says it's a presumption. The presumption could perhaps be overcome, but in a case where you're dealing with a murderer, you say that person would have a difficult time, but what standards are we to apply? Because we'll get all kinds of factual scenarios. Who would represent the other side? Would someone- would ATF- your suit is against the Attorney General and the head of ATF. Is it ATF who should come in and say, We have investigated this. This person should not get the gun. Is it the court that has to make the investigation? Congress has said ATF shouldn't spend money under 925C. Is Congress going to be happy having ATF come in on these petitions to oppose the petitions if they feel a person shouldn't have the gun back? Is someone going to come in and tell the court the other side of the story? I'm sure somebody would. Somebody always comes by. They come by when we have people convicted of nonviolent misdemeanors. They come by when people are convicted of traffic offenses. I have a case like that where they are arguing for a lifetime disability. You're sure someone would come by? As a judge, if I'm going to have someone come before me and say I want my gun back, I want to have some way to verify whether what that person tells me is true, and I think it's very likely that there are felons who will come in and tell you things that aren't true. So how do we verify what's going on? The same way the courts verify all the other very serious arguments that are made to them all the time. They have the adversary system. They have someone on the other side. Who would be the someone on the other side? I believe Mr. Nemeroff would be on the other side. He's on the other side in every case. Well, is the Department of Justice going to free up a whole new division to depose these cases? If it has to do that, then yes, because I understand that enforcing constitutional rights is expensive. It costs money. It takes resources from the government to respect people's constitutional rights. But the people who made the decision at the basic level to ratify an amendment to our Constitution that says people have a constitutional right to keep and bear arms. How do you deal with the issue of these individualized decisions and notice? We're talking about a criminal statute here. Under your theory, if an individual judge decides Individual A has shown sufficient rehabilitation, rearm. Another judge seeing an individual with a similar background gets charged with a 922G, gets indicted for it, is before a judge, faces a motion to dismiss. That particular judge says no plain language of the statute applies. I'm sorry. You are going to face trial. Your proposal doesn't seem to take into account the need to give fair notice of when that rearmament is available or not. How do you deal with that issue? Your Honor, there's an equality in the system. We have people sentenced to jail for very long periods of time by one judge who might get probation. Now we're talking about Fifth Amendment notice as to whether or not their conduct is criminal. Well, I think people are noticed when they see 922G1 that they are presumptively disarmed, and that's why they should stay away from firearms. And if they wish to go to court and seek to have that presumption overturned, they're free to do so and convinced if they might, a judge, that given the holistic situation that they present, including a variety of factors. Well, let's go back to your sentencing issue. You said in sentencing judges can sentence in different ways, but they have guidelines and a sentencing structure. I think that Judge Van Aske was starting to ask you this very question. What kind of standards is a judge to apply in this scenario? The same standards that this Court elucidated in bargaining, which other courts have hinted at, are a starting point. To be sure, Congress can legislate in this area further. Congress can do a lot of things. Congress can, just as the sentencing guidelines have come down and helped district courts, as it were, to sentence people in a more predictable fashion, we may have perhaps a revised 925C process. As the D.C. Circuit said, these types of cases might signal to Congress that they need to better deal with this statute now that Heller has come down and the Supreme Court has said that there's a presumption that every court can be overturned. What about the notice issue? I still don't understand how each individual would have notice of whether their circumstances are sufficient such that they can take a gun, and we'll assume someone gets a gun as a gift, and we'll assume that they're allowed to receive it without making the false statement on the form that you'd have to complete to buy a gun. How does that person know that their circumstances are going to be blessed for having that gun when there's no standards? They don't know how the judge might decide in the case they've yet to file, but what they do know is that Section 922G1 is not vague. It has been challenged many times for vagueness. All of its challenges have failed. 922G1 gives fair notice to people that if they've committed a certain particular violation, they may not touch a firearm, and that does not need to be revisited. If a challenge, an as-applied challenge, is made and is rejected, and the same person thinks, you know, now I'm a better person, a better citizen, three years later brings the same challenge before the same court, what is going to stop that from occurring? That is, repeat applications. People can file the repeat applications, and at some point courts do need to, and this is perhaps a little bit different than what this case presents, but as a general matter, courts do probably need to deal better with frivolous litigation, with repetitive claims, with people who ..... That may not be personal. It's not frivolous. It's not frivolous. I will go into the priesthood, I'm now a monk living in a castle. You heard the example.  Now I want .... What do you mean go there? You're a monk and a priest. Well, if circumstances have changed materially, people should be able to try again for certain. Hopefully they would come to court. The administrative problems are extraordinary. I think if that were to occur, I mean, how about the idea I think that Judge Schwartz was raising? Well, maybe I know a judge in the Eastern District that is better at these applications and I can do a little form shopping, or maybe the Middle District, or maybe New Jersey. Well, Your Honor, these are all issues that are inherent to every type of litigation. People can engage in form shopping. But what we come down to, Your Honor, is this. We have a constitutional right, a fundamental right, that secures people the ability to have a gun. Is your position that, yes, the questions you are asking suggest that there are challenges that are formidable, but they're irrelevant? That's correct, Your Honor. They're irrelevant to this court because this court does not have the authority to set aside or look past a constitutional provision simply because it believes that it takes too much time or it's inconvenient. If Congress were to fund the review of applications, would that knock the pins out from under your as-applied challenge? It might. At that point, since we're not dealing with 1983, where under Patsy you need to exhaust remedies here, as the D.C. Circuit sort of suggested in the Schrader case, it might well be that Congress requires or the courts require exhaustion of 925C before this type of case can be brought. It wouldn't eliminate the constitutional claim. Why shouldn't we look to provisions of 922 that say that if you go to the state court and have the disability relieved, that that basically takes out from under G1? Why shouldn't we have that? 92120. 921.  Because in most cases, for various reasons, Your Honor, and let me list them. Number one, in most cases, states have not either taken away all the rights under Logan, those rights can't be restored, or there are no restoration provisions available. That's the situation in Pennsylvania. I don't believe we can get back on a jury with these particular clients. Otherwise, that's obviously a simpler routine. There are states where restoration of rights is more available to people, but we are dealing with a federal constitutional standard. You could pursue expungement in Pennsylvania, couldn't you? Did they? It doesn't. I don't believe it would restore the jury right, Your Honor. And they did restore the firearms rights, but I believe the Governor here has agreed with us. What about Maryland? Couldn't you make a case that Mr. Suarez's rights were restored in Maryland? Because the disability in Maryland was based upon the length of sentence, he was disabled from serving on a jury while the charges were pending, but because he did not receive a sentence in excess of six months in prison, his rights to serve on a jury were restored. Couldn't you make an argument that, as to Suarez, he has the right now under federal law, under 921A20, to possess a firearm? When we looked at it initially, that did not seem to be available. The government has taken the position that he's prohibited. We can always reexamine that. But the bottom line is that the Second Amendment here guarantees people a certain right. We can't say, well, you get that right if you go through a state process, then you're out of luck and it's just too bad. But it doesn't guarantee everyone certain rights. It only guarantees certain persons. There's a who restriction in 921A21. That's my question, too. It keeps saying, over and over, the Second Amendment guarantees rights. Howard makes it very clear that that right is not absolute. It is subject to certain, and then we get into the historical analysis, subject to certain, and I'll take the adjective out, limitations and restrictions. That's absolutely correct, and we don't challenge that, Your Honor. To be sure, our argument is not that. When I say everyone is entitled to the right, I don't mean to suggest that people who are properly disarmed under Heller somehow get their rights back. They do not. If someone has committed a violent crime. Well, I thought you said they could come back. They can come back. That's why I asked you that at the beginning. Is this categorical or not? Heller said, okay, 921A21 sets forth a category. That category is presumptive, with respect to felons at least, and it's presumptively lawful with respect to felons. That presumption can be overcome on a case-by-case basis by people whose facts show that their disarmament does not advance the government's legitimate interests anymore and therefore will be unconstitutional in that particular case. Is there any history of cases where violent felons, during the last 200 years plus, have come forward and gotten their Second Amendment rights back after having committed a violent felony?  So then why shouldn't we conclude from that that when people committed a violent felony at whatever age, whether it was 16 or 21 or 30, that they lost their Second Amendment rights? Maybe that's why Congress stopped funding 925C, because history says that people who then got their guns back performed violent acts, and Congress said, okay, we're not going to let ATF do that anymore. So it would appear that there were violent people who got their guns back, or there were people who got their guns back who became violent. Yeah, but the answer is, that's how we approach it. Yeah. Okay, to go back to the first question, there's not much history of anyone losing their rights in the first place until 1961, under this version of 925G1. There have been allusions to the fact, for example, in the constitutional debates, that people who weren't peaceable could be disarmed. But there wasn't really much of a historical mechanism for either taking away people's rights or for restoring them. We're stuck with Heller. Heller tells us – So local constables in the colonial era of the early 19th century, they didn't prevent mentally ill people or violent felons from having guns? Lunatics, people who were drunk, people who were disloyal to the government were disarmed on occasion. The question was, did any of them get their rights back? Because if what you say is true, that they were disarmed, and there's no evidence that any of those folks ever got their rights back, that would seem to undercut your argument that a violent felon could later come back and have their Second Amendment rights restored, would it not? It may or may not. We have to have some understanding, to be sure, to credit the idea that historical practice informs the scope of constitutional rights. What we know in that respect, though, and following up on Judge Hardiman's question, we are looking at historically a very, very different era, which is to say an era that did not have the degree of regulation that exists today. Do we know anything about any sort of regulatory apparatus that was available to restore these rights, even if they were somehow taken away or individuals were deprived on an individual basis of the right to have a firearm? That's right. I'm not aware of such processes, but certainly historical practice is relevant for us to understand the scope of constitutional rights, but let's look at the Alien and Sedition Acts. Those were enacted shortly after the ratification of the First Amendment. I don't think that most people today would say, well, the first Congress would have known about the Alien and Sedition Act or the Congress that enacted those acts would have known about the First Amendment, and therefore that act would today be constitutional. I think there would be a problem with that argument. And likewise, with the Second Amendment arguments, it's hard to pull one concrete, one little example of something that goes back maybe a long ways, maybe not such a long time, and say, aha, this defines the scope of the right. I think that what we have to focus on is the fact that Heller is controlling here. Heller tells us that it's the presumption. The presumption can be overcome. That's not just what this Court has said, it's what everybody has said. Ever since the Mozzarella attempts to do that, what standard do you wish us to apply to this as-applied challenge? What test do you wish to us? Is it Mozzarella or is it something else? We believe that the approach taken by the court in Bindrup is more correct than in Suarez. I don't think in the end it makes too much of a difference, Your Honor, because in the end, functionally, they arrive at the same place. That is, an inquiry to see whether or not the person is in fact dangerous. On that point, Judge Ambrose's point, we would be the first court, wouldn't we, to say an as-applied challenge can be asserted on a section 922. Not asserted, but one. No, Your Honor. As our brief has noted and as I've mentioned here, the Fourth Circuit has repeatedly recognized this. Well, not recognized, but approved an as-applied challenge. This will be the first time it's approved. But let's remember, we're at the beginning of the Second Amendment. I hope we're at the beginning, not at the end, of the Second Amendment's development. We haven't had a lot of cases. It's only been since 2008. But four have considered it and rejected the application. They considered it. That is true. They considered it in cases where the people were plainly not deserving of relief by any stretch of the imagination. Mr. Barton's record was very serious. So were the criminals in these other cases in the Fourth Circuit. And meet the standards about whether it's dangerous or not. Is that the question? Is this thing dangerous? Because if it is, you should come to grips with the government's assertion that the U.S. Supreme Court in Johnson recently threw its hands up and said, well, we don't know how to distinguish between violent and nonviolent crimes. It's just too darn fuzzy. We can't manage it. Why is that not a problem for the position that you're trying to take here, which appears to be dangerous people, yet categorically they're no good, when the Supreme Court has recently said, you know, we're not sure how to handle that? Well, the Supreme Court can, in that case it was looking at an act of Congress, which has bedeviled courts for a long time. But it's an act of Congress that's bedeviled the courts because the problem of distinguishing violent from a nonviolent crime. How do you manage, how do you see yourself and us through that thicket? Because here we're talking about a constitutional provision. What difference does it make to hang the label constitutional? You still have to make a division. A court's going to be presented with a question, dangerous or non-dangerous, violent or non-violent. How do you, when after a decade of dealing with it, the Supreme Court of the United States says in the context of ACCA, we just can't, we can't take it anymore. I mean, why would we weigh into that in this context? And if we were to weigh into it, how would we do it? Well, first of all, you'd have to weigh into it because the Supreme Court has said that this is a presumptively lawful measure. That means the presumption can be overcome. The Supreme Court has also said that law-abiding, responsible citizens have a right to keep their arms, which means that where's the standard? How do we apply it? Because if the standard is dangerousness, it seems to me you've got to come to grips with how you define that. How do you deal with that? The standard was set out in Barton. Wasn't the standard really set out in Marzarella first? Yeah. Whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment, if not, the inquiry's over. If so, you apply some form of ends-means scrutiny, which in that case would either be intermediate or strict scrutiny. Do you agree or disagree with that? I disagree. That's what Marzarella says. And Marzarella, it's been cited approvingly by most circuits, has it not? Yes, including in the Fourth Circuit when Chester. But then when Chester involved the domestic violence 1922-9 issue, where the presumption didn't apply because he was a misdemeanant, which is the same decision. Has any circuit disapproved of the Marzarella? No. But what the Fourth Circuit has done with Marzarella, or I should say with Chester, which followed Marzarella, they went back and said, well, now that we're dealing with the part of Kelly that talks about presumptive lawful exceptions, Marzarella doesn't quite work so well for us. We're going to call it streamlined. And we're just going to ask in cases like Moore and cases like Carpiglione, we're going to ask now whether or not the challenger here has set forth enough facts to distinguish his circumstances from the realm of sort of generic challenges. And isn't Marzarella a different case than Barton? I mean, aren't we dealing with a different section that doesn't go to the core right? That's right. That's right. We're talking about it's still a Second Amendment challenge. So does that mean then that if it goes to the core of the right, we should use a categorical approach like the one used in Heller, but if it's more of a time, place, and manner type of thing to analyze, to analogize to the First Amendment, that we should apply Marzarella's test? Is that your position? I'm not sure the core, non-core distinction is useful here. I think the better distinction is that in the Barton type situation that we have here, we're talking about whether somebody is entitled to the right at all, whether someone is capable of enjoying the right. I guess that's what I meant by core. If it eviscerates the right, then it's core. Yeah, it eviscerates the right. There's no difference between if you should have gone with a serial number on it or without a serial number, you still have the ability to defend yourself. That's what we said in Marzarella. But it goes to a core right because anybody, it would affect any gun owner, and therefore Marzarella said it does go to the core right. We then go a step further and examine to see that we don't want these guns without serial numbers on them circulating. But let me ask you about presumptively. You read the footnote, and the footnote says, We identify these presumptively lawful regulatory measures. Now, you are interpreting presumptively to apply to the individual law. Could not presumptively be saying that some of these measures are valid and some of them aren't valid, and that's why we say they're presumptively lawful and we will determine, examining each statute individually, whether this one is lawful and this one is lawful. But your focus, you have presumptively modifying individual laws. Do you have a basis for that? I believe that's the natural way to read the opinion, especially in this case when we're concerned with 922G1, which approximates very closely the felon ban that that sentence refers to. And so every court has understood presumptively to modify 922G1, and that's why in Williams in the Seventh Circuit, in D.C. in the Schrader case, in the Fourth Circuit in the various cases, and in this court in Barton, everybody reads presumptively lawful as attaching to the presumptively lawful ban on the possession of firearms by felons. Is it lawful or not? Once we determine it's lawful then, the presumptively falls off and we don't say it's half lawful. No, the presumption can be overcome. It's presumptively lawful in the sense that it may be, and every court has approved of 922G1 as a facial matter, as a categorical matter, but people are allowed to come to court and challenge that presumption that it's constitutional as applied to them. Well, that's your position, but no one yet, no case yet has actually held that. Well, I believe that actually Barton was a holding that said that this is how we're going to look at as applied challenges. Well, but that was not the result in that case. It wasn't the result because Mr. Barton himself was not a very deserving challenger. Well, given that, should we have even gotten to the second part of the Barton inquiry? That's the problem. That's the real problem. Given the nature of Barton's conduct, should we have even progressed to what should have been the second part of Mozzarella? Yes, the court had to explain how it was addressing his challenge and what standards it was using to reject Barton's claim. First, the court had to say, here's the governing law. We look at these factors. These are the considerations that we make. And then we look at Mr. Barton and he doesn't quite fit these categories and, therefore, he's out of luck. But every court that's looked at this has said that people can come to court and challenge the application of the statute to them because, with respect to them, it simply does not advance the government's legitimate, no questions here at all, the government's legitimate interest in disarming the English people. I think Judge McKee's question is, for Barton, an as-applied challenge for a person who has committed violent acts and was still in the process of trying to do violent acts, does that person fit within the first prong of Mozzarella? In other words, does the law impose a burden on his conduct falling within the scope of the Second Amendment? And the answer appeared clearly to be no. And Mozzarella says, if that's the case, the inquiry is over. You don't go to the second step that ends me and screws me. He loses. That's correct. Well, that's a valid approach. That's the approach that the Suarez Court below took. That is to say that Barton essentially is the first step of Mozzarella. That is, we look to see whether you're a law-abiding person, and if you're not, that's the end of the case. It's step one. Well, you said law-abiding, which complicates the discussion a little bit. Judge Nagle, any question at all? I have none. Thank you. Thank you, Your Honor. Okay. Thank you very much. Thanks. Thank you. I think where I'd like to start, my opposing counsel was asked a number of questions to see if he could identify standards to apply in his proposed approach to these challenges, and he really couldn't. And that poses a number of problems. It poses problems of fair notice. It poses problems of administrability. It also just isn't a proper way for courts to judge the constitutionality of acts of Congress. He seems to expect that each individual district court judge. I think his answer was that he would use the standards set out in the Barton, so there was an answer to that. What standard would you use for a Second Amendment challenge? In this context, we have a very clear standard. It's if an individual has been convicted of a serious crime, then they fall outside of the scope of law. Would you use the Marzarella standard? Well, Marzarella sets out the two-step framework. So at the first step, my answer answers the first step of Marzarella, and we do think that this court can be addressed just at that step. Now, if you do move on to the second step, intermediate scrutiny is the appropriate approach. And I think that there are several court decisions that are indicative of how the court would approach the question. Don't you put the rabbit in the hat when you say serious? You really do. I tried to get you off that, and you're still using that word. As soon as you say that, you put the guys on the other side for saying dangerous or violent, and then you say serious. How does that advance the ball? Well, the reason I think it advances the ball is, like I said before, if a state passed a law saying if someone had a speeding violation, well, that violated the crime, and that should be a disability, then that would obviously be subject to a strong technicality. Why is that so obvious? In the argument in the Suarez case, if I recall correctly, you said, well, maybe if 49 states said it was okay and one state said it wasn't okay, that could be troubling. And Mr. Gerhardt got up and said, well, isn't that a coincidence? Because in the Baginski case next week, we've got that exact thing. Massachusetts has a DUI that will take two years on a misdemeanor plus, and I'm pretty sure that they're not going to come into court and say, we give up. And he was right. The next week, the Department of Justice filed in that case and said, oh, no, this is okay. It's no good. It's a serious crime. So I'm having trouble with you saying, well, obviously, if it was speeding, it wouldn't be a problem, because when it was a DUI and a misdemeanor DUI, but with two years and a little, in Massachusetts, you said serious crime, dangerous man, take the gun away. How do you define serious and how is there any standard in that for us? The standard, I think, the Congress looks to the punishment the states would impose. Let's look at a punishment under theft from a library. In Pennsylvania, library theft constitutes a misdemeanor of the first degree, punishable by up to five years of imprisonment if the value of the material is $150 or greater. Is that serious? Our librarian is right behind you before you answer the question. That fits the statutory definition. You can see that, right? Well, I think certainly there's a strong argument that if Pennsylvania was subjected to that punishment, then a court is not in a position to say it's not serious. Now, that is a different crime. In these two cases, judges don't even impose any jail time whatsoever. In one case, a suspended sentence. In another case, nothing. So the judge is saying, is sentencing, this ain't all that serious. And we're trying to have people be practical. And the problem with what you're suggesting here is it doesn't, I mean, it's a bright line, but how practical is it? It is practical, Your Honor. First of all, it has a good establishment in history. Secondly, individuals can regain their firearms. You're taking such hard of a question. You tell me, practically speaking, that person who took $160 worth of goods from a library and it couldn't be punishable up to five years gets no time, just a slap on the wrist, and you're telling me that person loses his or her gun rights. Well, that individual would certainly have a stronger argument than the plaintiff's here that their crime wasn't serious. And they could raise that argument. Counsel, as soon as you take us into the realm of examining the individual characteristics of the underlying offense, then aren't we, are we doing an individualized inquiry, at least looking at what that offense is? And don't you then need to give us what are the standards, what's the benchmark for us to undertake what seems like it needs to be, at least at that level, some kind of means and scrutiny, identifying the government's interest in how that underlying offense serves the interest that, I think we're still waiting for you to articulate. Well, I think there's an important distinction to be made. There's a real difference between the court looking at the underlying offense and the approach of the plaintiff's one here, which is to look at this holistic approach, looking at the time since the conviction, all these other factors that they've introduced. Well, part of the argument is pointing us to the specific offenses, right, that they were convicted of years ago. That's right. And I don't understand plaintiffs to argue that their convictions aren't serious. As Judge Roth, I think, indicated before, they seem to be arguing that while the prohibition may have been valid at the time of their conviction, it now should be they should have their firearms rights restored. So it is a very different question if someone brings an as-applied challenge and argues that for whatever reason some state has imposed some criminal penalty that, you know, shouldn't qualify for the prohibition. That's a different challenge. You really don't hold your position at all by arguing that a baker who has a relationship with someone who's 17, if you're 65 days early, that's as soon as you just turned 17, that's a serious offense in terms of whether or not that person should forfeit their right to firearms. That approach, I mean, this is not helping me. Maybe my colleagues are more insightful than I am, but I'm not feeling it. How about Mr. Suarez, who we trust now with our state secrets? He has his top-secret security clearance. We trust him with our governmental secrets, and yet we don't trust him in his own home with a gun. So if I could take Judge McKee's question first. I think that question really points to- That's better, right? The security clearance determination is, of course, made in the discretion of an executive agency. It's not made for the purposes of firearms rights. I think it's relevant that a security clearance can always be revoked, but if a court holds that this law is unconstitutional as applied to an individual, I don't think the court is going to allow the government to come back and say, oh, now actually it is constitutional as applied. So Congress permissibly would if he committed an offense, right? That's the whole point. People change over time, and circumstances change over time. So if Mr. Suarez is caught doing something dangerous or violent, then he's right back under 922G1, or the government could at least say, hey, hold on a second, that reinstituted 2nd Amendment right no longer fits, 922G1 ought to kick back in. I think it's hard to imagine how that would work, and as I've said, there's really no- I heard prosecutors all the time as a sentencing judge come in and say, these are the circumstances of this person's crime. Why would that be any different? Answer my question, and then your light is on. Answer that, and then you can answer my question, and then your light is on. Okay. I think certainly if they're convicted of another disqualifying crime, they would be disqualified, but my point is that Congress permissibly can impose this prohibition without tying it to, you know, employment with the government, security clearance, that sort of thing. So judging McKee's question, I think that question really points to how standardless the inquiry the plaintiffs are asking for. I mean, would we say that if the victim was 16 or 15 that it's okay? Some states certainly say that this sort of relationship with a 17-year-old is subject to significant punishment and is a significant crime. Pennsylvania is one of those states, and I think Congress can rely on the state's judgment in that respect. Okay. Judge Nago, any questions? I have none. Thank you. Thank you.